IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DARYL JAMES SINCLAIR, #273546,          *

       Plaintiff,          *

      v.          *   CIVIL ACTION NO. GLR-13-1735

OFFICER L. PURNELL,          *
OFFICER R. BROWN,
OFFICER J. SANDER,          *
OFFICER D. UNDERWOOD,
OFFICER W. ROBBINS,          *
OFFICER BARR,
OFFICER HALLOWELL,          *
OFFICER R. BRITTINGHAM,
OFFICER SCHMIDT,          *
OFFICER A. WALLER,
UNKNOWN DEPUTY,          *

       Defendants.          *
                          *****

## MEMORANDUM

On June 14, 2013, Plaintiff Daryl James Sinclair (hereinafter referred to as "Sinclair") filed suit against Salisbury, Maryland Police Officers under 42 U.S.C. § 1983, alleging excessive force on the part of the officers and seeking compensatory and punitive damages. According to Sinclair, the officers' actions during his arrest resulted in three broken teeth and open wounds on the side of his face, which required stitches at a local hospital. Pending before the Court is Defendants' Motion to Dismiss or, Alternatively, for Summary Judgment, which shall be construed as a Motion for Summary Judgment. ECF No. 14. Sinclair has filed an Opposition and a Motion to Appoint Counsel. ECF Nos. 20 & 21. Defendants' Motion may be determined on the pleadings and shall be denied without oral hearing. See Local Rule 105.6 (D.Md. 2014).

## I. Background

With the exception of the reasonableness of force used and a factual question of whether Sinclair reached for an officer's service weapon, the facts of this case remain largely undisputed.  On December 26, 2012, a number of officers from the City of Salisbury were dispatched to an area of the City concerning an individual who had just pulled a gun on two victims.  The officers arrived on the scene and interviewed the victims who informed officers that the incident took place outside a residence located at 716 Oak Hill Avenue. Defs.' Mot. at Exs. 1-3.  One victim told the officers that when they arrived at the residence, he walked to the door while his companion remained in the car. Upon approach, a black male met the victim at the door and pointed a long, dark revolver-styled handgun at him.  <u>Id.</u>   The victim identified the gunman as "Daryl."  <u>Id.</u> at Ex. 2.  Both victims reported that they retreated to their car and drove away.  Once out of harm's way, they called police who then confirmed the address and secured the residence.  <u>Id.</u>

In establishing a perimeter around the residence, officers observed a man and woman exit the house and move towards a red Oldsmobile Alero parked nearby.  <u>Id.</u> at Exs. 3 & 4.  Officers were directed to detain both subjects.  <u>Id.</u> at Exs. 4 & 5.  Two officers were asked to stay with the male subject later identified as Daryl Sinclair. Defs.' Mot. at Ex. 4.  The two victims were brought to the scene and identified Sinclair as the man who had pointed the gun at them.  <u>Id.</u> at Exs. 1-3.  One of the officers observed a child sleeping in the Oldsmobile and a black-zippered bag on the front passenger seat.  Sinclair was advised he was under arrest for first-degree assault.  <u>Id.</u> at Ex. 3. Defendants affirm that as Sinclair was being placed into the back seat of a police car, he pulled away, lunged at one of the officers, and reached for the officer's holstered service weapon.  Defendants maintain that Sinclair "forced his hand onto the gun in the space between the officer's right hip and pulled it toward him."  <u>Id.</u> at Ex. 4.  The officer, unsure if Sinclair's hand was still cuffed allegedly

used his right elbow to strike Sinclair and to spin away to break Sinclair's grip on the weapon.  The officer reached for his holster and found that its top strap had been unsnapped and, as a result, his weapon was no longer fully secured.  Id.  Sinclair denies reaching for the weapon.

After breaking free, Sinclair began running down Oak Hill Avenue chased by Salisbury police officers.  Id. at Exs. 4 & 5.  Officers lost sight of him when he turned onto Wilkins Street. Sinclair's description was broadcasted via police radio and the area was flooded with officers from the City of Salisbury, the Office of the Sheriff, and the Maryland State Police.  Defs.' Mot. at Exs. 3-8.  During the foot chase, Sinclair was twice ordered to stop and get on the ground.  He refused to do so and, according to one of the officers, was seen reaching into his shirt as if to "retrieve a gun."  Id. at Ex. 5. Sinclair was spotted and caught by an officer who again ordered him to the ground.  Sinclair refused.  The officer sprayed Sinclair in the back of the head with two short bursts of "OC" spray.[1] The spray was ineffective, but did cause Sinclair to stop, turn, and face the officer.  An officer grabbed Sinclair's shirt and pulled him to the pavement.  Id.  Defendants affirm that Sinclair continued to struggle and fight by keeping his body weight on his left arm and refusing to yield it to officers.  Id. at Ex. 5.

Defendants maintain that it took several officers to gain Sinclair's compliance and they acknowledge that an officer placed his knee in Sinclair's back to avoid further chance of escape.  Id. at Exs. 2 & 4-8.  An officer, with the assistance of another, was able to place Sinclair's right hand in the cuff that was secure on his left arm.  Sinclair was pulled to his feet and walked to a nearby police car.  When he began to resist, he was moved to the curb.  Id. at Exs. 2 & 6.  Defendants assert that Sinclair suffered a cut to his left eye lid and was treated at the scene by Emergency Medical Services.

He was taken to the Emergency Room at a local hospital in police custody and then to the Police Department.  Defendants state that Sinclair's injuries consisted of a cut eyelid and some swelling around the left eye.  Defs.' Mot.  at Exs. 2 & 6-8.

According to Sinclair, two officers approached him at gunpoint, handcuffed him, and informed him that he was under arrest for an assault.  Compl. at 6.  Sinclair acknowledges that while being escorted to a squad car he attempted to flee.  Pl.'s Opp'n at 3.  He claims that he ran and lost the officers pursuing him in the neighborhood and during the course of his flight he was able to free one cuff from his wrist.  Id.  Sinclair alleges that an officer saw him and gave chase with his gun drawn, caught up with him, and "violently" forced him down to the ground.  Id.  Another officer allegedly placed his knee into Sinclair's back while he was being handcuffed, a different officer excessively sprayed Sinclair with pepper spray, and yet another officer beat him with a service weapon "so severely that it split the left side of [his] face open along with [his] left eyelid." Id. at 3-4.  During this time, several other officers allegedly kicked Sinclair in the face and head "from all angles" as they arrived to the scene.  Id. at 4.  Sinclair claims that he suffered three broken teeth and open wounds on the side of his face which required stitches at a local hospital.  Id.

The officers obtained a search warrant for the 2000 red Oldsmobile Alero and the residence on Oak Hill Avenue.  A black bag containing a loaded handgun was found on the front passenger seat of the vehicle.  Defs.' Mot. at Ex. 3.   Sinclair was charged with first-degree assault (two counts); second-degree assault (two counts); reckless endangerment (two counts); use of a firearm in the commission of a crime of violence; wearing, carrying, and transporting a handgun; attempting to disarm a law enforcement officer; resisting arrest; obstructing and hindering a police officer; second-

---

[1] OC or oleoresin capsicum spray, is also known as pepper spray.  See www.medicalnewstoday.com

degree escape; attempted theft; and possession of a firearm by a convicted felon.  Id. at Ex. 9.   In

August 2013, a jury convicted Sinclair of resisting arrest, obstruction and hindering, and escape.  He

was acquitted of second-degree assault, attempting to disarm a law enforcement officer, and

possession of a firearm by a convicted felon.  The remaining charges were nolle prossed.  Sinclair

was sentenced to three years in jail.  Id.

## II.  Standard of Review

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint if it fails to

state a claim upon which relief can be granted.  The purpose of the rule is to "test the sufficiency of a

complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability

of defenses."  Presley v. City of Charlottesville, 464 F.3d 480, 483 (4th Cir. 2006)).  To that end, the

court bears in mind the requirements of Fed. R. Civ. P. 8,  Bell Atl. Corp. v. Twombly, 550 U.S. 544

(2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant

to Rule 12(b)(6).  Specifically, a complaint must contain "a short and plain statement of the claim

showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible

claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678-79; see also Velencia v. Drezhlo, No.

RDB-12-00237, 2012 WL 6562764, at *4 (D. Md.  Dec. 13, 2012) (discussing Iqbal and Twombly

standard).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal,

556 U.S. at 663.

When reviewing a motion to dismiss, "[t]he court may consider documents attached to the

complaint, as well as documents attached to the motion to dismiss, if they are integral to the

complaint and their authenticity is not disputed." Sposato v. First Mariner Bank, No. CCB–12–1569, 2013 WL 1308582, at *2 (D. Md.  Mar. 28, 2013); see also CACI Int'l v. St. Paul Fire & Marine Ins. Co., 566 F.3d 150, 154 (4th Cir. 2009); Fed.R.Civ.P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").  Moreover, where the allegations in the complaint conflict with an attached written instrument, "the exhibit prevails." Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991); see also Azimirad v. HSBC Mortg. Corp., No. DKC–10–2853, 2011 WL 1375970, at *2–3 (D. Md. Apr. 12, 2011).  If the Court considers matters outside the pleadings, as the Court does here, however, the Court must treat the motion as a motion for summary judgment.  See Fed.R.Civ.P. 12(d); Syncrude Canada Ltd. v. Highland Consulting Grp., Inc., 916 F.Supp.2d 620, 622–23 (D. Md. 2013).

Summary judgment is proper when the moving party demonstrates  through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A); see also Baldwin v. City of Greensboro, 714 F.3d 828, 833-34 (4th Cir. 2013).  When considering cross-motions for summary judgment, the Court must consider "each motion . . . individually" and view "the facts relevant to each . . . in the light most favorable to the non-movant." Mellen v. Bunting, 327 F.3d 355, 363 (4th Cir. 2003).  If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts.  See Celotex v. Catrett, 477 U.S. 317 (1986).  The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 251 (1986).  Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment.  Id.

## III. Discussion

In his Opposition, Sinclair claims that Defendants violated his rights under the Fourth Amendment and that he possesses sufficient material facts to "keep the case moving forward."  ECF No. 20.  He reiterates the claims of excessive force raised in his Complaint and states that he suffered a gash on his left eye lid, a bone-deep gash on the left side of his left eye, busted lips, three broken teeth, and badly torn skin on the left side of his head and face.  He claims that due to his confinement, he is unable to obtain the declarations of attending physicians which would "help" his claims and therefore asks that summary judgment be denied under Rule 56(f).

Defendants claim that a § 1983 cause of action may not be held against them because  the force used against Sinclair was objectively reasonable under the circumstances and because they are entitled to qualified immunity from Sinclair's claims alleging that they employed excessive force during his arrest.[2]  The Court disagrees.

A.    Excessive Force Claim

Claims of excessive force during an arrest or investigatory stop are examined under the Fourth Amendment's objective reasonableness standard.  See Graham v. Connor, 490 U. S. 386, 395

---

[2] Defendants additionally argue that, because municipalities are immune from punitive damages, Sinclair's punitive damage claim against the officers in their official capacities should be dismissed under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).  Because a suit against a governmental officer in his official capacity is the same, for purposes of recovery, as a suit against the governmental entity itself, Sinclair is barred from seeking punitive damages from the Defendant officers in their official capacities. See Kentucky v. Graham, 473 U.S. 159, 165–66 (1985). Given the appointment of counsel and the Court's findings regarding Defendants' Fourth Amendment and qualified immunity arguments, the Court shall not rule on this argument at this time.

(1989). <u>Graham</u> governs my analysis of seizures alleged to have been effected in violation of the Fourth Amendment, and more specifically situations where excessive force is employed. <u>Graham</u>, 490 U.S. at 399; <u>see also</u> <u>Jones v. Buchanan</u>, 325 F.3d 520, 527 (4th Cir. 2003) (barring excessive force in effecting seizures). <u>Graham</u> specifies that whether force is excessive or not is based on "objective reasonableness" under the circumstances "without regard to [the officer's] underlying intent or motivation." 490 U.S. at 390, 397. "In assessing whether an officer's actions were objectively reasonable, 'we weigh the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" <u>Turmon v. Jordan</u>, 405 F.3d 202, 207 (4th Cir. 2005) ( quoting <u>Buchanan</u>, 325 F.3d at 527). "The nature of the intrusion on a plaintiff's Fourth Amendment rights is generally measured by 'the amount of force employed to [e]ffect the seizure.'" <u>Id.</u> (citing <u>Howerton v. Fletcher</u>, 213 F.3d 171, 173 (4th Cir. 2000)). "The extent of the plaintiff's injuries is also a relevant consideration." <u>Id.</u> (citing <u>Buchanan</u>, 325 F.3d at 527). "Several factors are considered in assessing the governmental interests at stake, including the 'severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officer [ ] or others, and whether he . . . actively resisted arrest or attempted to evade arrest by flight.'" <u>Id.</u> (citing <u>Graham</u>, 490 U.S. at 396). "Because 'police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving,' the facts must be evaluated from the perspective of a reasonable officer on the scene, and the use of hindsight must be avoided." <u>Waterman v. Batton</u>, 393 F.3d 471, 476–77 (4th Cir. 2005) ( citing <u>Graham</u>, 490 U.S. at 396-97). This "requires balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." <u>Tennessee v. Garner</u>, 471 U.S. 1, 8 (1985) (citation omitted). "The

8

Constitution simply does not require police to gamble with their lives in the face of a serious threat of harm." Elliot v. Leavitt, 99 F.3d 640, 641 (4th Cir. 1996). "The right to make an arrest carries with it the right to use the amount of force that a reasonable officer would think necessary to take the person being arrested into custody." Martin v. Gentile, 849 F.2d 863, 869 (4th Cir. 1988).

There is no material dispute that Sinclair was arrested for brandishing a handgun at two individuals. He admits that during his arrest he fled from the officers and freed one hand from handcuffs. Likewise, he does not refute the officers' claims that he thrice refused to stop running and to submit to the officers. The injuries shown and affirmations made by Sinclair in his affidavit and exhibits, however, are sufficient to create a material dispute as to the objective reasonableness of the force used by the officers used on Sinclair after he was taken to the ground and finally subdued. Therefore, at this juncture, the Court is unable to find that Defendants' actions were reasonable under the circumstances and the Motion for Summary Judgment shall be denied.

B.     Qualified Immunity

Further, Defendants' claim that even if their actions were unconstitutional they are entitled to qualified immunity fails. Under federal law, "[t]he doctrine of qualified immunity protects police officers and public officials from claims of constitutional violations 'for reasonable mistakes as to the legality of their actions.'" Merchant v. Bauer, 677 F.3d 656, 661 (4th Cir. 2012) (quoting Saucier v. Katz, 533 U.S. 194, 206 (2001)) . "Qualified immunity extends to protect officials 'who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful.'" Williams v. Ozmint, 716 F.3d 801, 805 (4th Cir. 2013) (quoting Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc); accord Durham v. Horner, 690 F.3d 183, 188 (4th Cir. 2012). The qualified immunity doctrine serves two important interests: "the need to hold

9

public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009).

A qualified immunity analysis involves two inquiries: (1) whether the facts alleged, "[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a constitutional right," Saucier, 533 U.S. at 201; and (2) whether the right at issue "'was clearly established in the specific context of the case—that is, [whether] it was clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted.'" Merchant, 677 F.3d at 662 (quoting Figg v. Schroeder, 312 F.3d 625, 635 (4th Cir. 2002)).  The "two inquiries . . . may be assessed in either sequence."  Id. at 661–62; accord Pearson, 555 U.S. at 236 (2009) (judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand").

The second inquiry "turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." Messerschmidt v. Millender, --- U.S. ---, 132 S.Ct. 1235, 1245 (2012) (quoting Anderson v. Creighton, 483 U.S. 635, 639 (1987) (citation omitted)). "To be clearly established, a right must be sufficiently clear 'that every reasonable official would [have understood] that what he is doing violates that right.'  In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" Reichle v. Howards, --- U.S. ---, 132 S.Ct. 2088, 2093 (2012) (quoting Ashcroft v. al-Kidd, --- U.S. ---, 131 S.Ct. 2074, 2078, 83 (2011) (some internal quotation marks and citations omitted)).

If the law at the time of the alleged violation was not "clearly established," the official will be entitled to qualified immunity, because "an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." Harlow, 457 U.S. at 818.  On the other hand, "[i]f the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." Id. at 818–19.  In determining whether a right was clearly established, "courts in this circuit 'ordinarily need not look beyond the decisions of the Supreme Court, [the Fourth Circuit], and the highest court of the state in which the case arose,'" as of the date of the conduct at issue.  Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs., 597 F.3d 163, 176 (4th Cir. 2010) (quoting Edwards, 178 F.3d at 251).

In sum, in determining whether Defendants are entitled to qualified immunity, the Court must (1) identify the right allegedly violated, (2) determine whether the constitutional right violated was clearly established at the time of the incident, and (3) evaluate whether a reasonable official would have understood that the conduct at issue violated the clearly established right.  See Henderson v. Simms, 223 F.3d 267, 271 (4th Cir. 2000) (quoting S .P. v. City of Tacoma Park, 134 F.3d 260, 265 (4th Cir. 1998)); see also Vathekan v. Prince George's Cnty., 154 F.3d 173, 179 (4th Cir. 1998).

Under the facts of this case as stated supra, the Court does not find that a reasonable officer could have believed that kneeing, kicking, and beating an already subdued arrestee while he was on the ground was reasonable.  Qualified immunity provides no basis to dismiss Plaintiff's allegations.

## IV. CONCLUSION

Defendants' Motion, insofar as it seeks dismissal of Plaintiff's excessive force claim, shall be denied.  Plaintiff's Motion to Appoint Counsel shall be granted.  A separate Order shall be entered reflecting the rulings entered in this decision.


Date: August 13, 2014                              _____/s/_____
                                                                       George Levi Russell, III
                                                                       United States District Judge